UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MISTY M. TENNANT,

   Plaintiff,          Case No.  1:16-cv-29

v.

                   HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant,
                   /

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Misty Tennant seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was thirty-six years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.42, 88, 97.) She obtained a GED, and was previously employed as a home health aide. (PageID.66, 77.) Plaintiff applied for benefits on October 7, 2011, alleging that she had been disabled since June 30, 2008, due to spondylolysis, degenerative disc disease, fibromyalgia, and migraines. (PageID.88, 97, 201–214.) Plaintiff's applications were denied on initial review, and again upon reconsideration, after which time she requested a hearing before an ALJ. (PageID.135–142, 150–151.) On May 2, 2014, Plaintiff appeared by phone before ALJ Gregory Wilson for an administrative hearing with testimony being offered by Plaintiff and a vocational

expert (VE). (PageID.61–80.) In a written decision dated August 28, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.42–59.) On November 10, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.35–39.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the

---

[1] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Wilson determined that Plaintiff's claim failed at the fourth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.47.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) migraine headaches; (2) back impairment affecting the cervical and lumbar spine; and (3) obesity. (PageID.47.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.48.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). Function by function, the claimant is able to lift and carry 50 pounds occasionally and 25 pounds frequently. The claimant is able to sit, stand and walk up to six hours each in an eight-hour workday. The claimant can occasionally kneel, crouch, crawl, and stoop as well as reach overhead. The claimant can frequently balance, but is restricted from climbing ladders, ropes and scaffolds. The claimant must avoid concentrated exposure to hazards.

(PageID.48.) Continuing with the fourth step, the ALJ determined found that Plaintiff could perform her past relevant work as a home health aide, because such work did not require the performance of work-related activities precluded by her residual functional capacity (RFC). (PageID.53.)

Although he was not required to, the ALJ proceeded to make an alternative fifth step determination. At the hearing, the ALJ questioned a vocational expert to determine whether a significant number of other jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The expert testified that Plaintiff could perform the

following work: nurse aide (12,000 jobs in Michigan and 210,000 jobs in the nation) and home attendant (4,000 jobs in Michigan and 77,000 jobs in the nation.) (PageID.78.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.54.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from June 30, 2008, through August 28, 2014, the date of decision. (PageID.54–55.)

## DISCUSSION

Plaintiff, represented by counsel, has failed to comply with the Court's March 24, 2016, notice directing the filing of briefs. That notice required that Plaintiff's "initial brief . . . must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand." (PageID.532.) Plaintiff has provided only a vague statement that is accompanied by equally vague argumentation later in her brief. The Court will address those issues it finds Plaintiff has raised below.[2]

### 1.   The ALJ Properly Considered Plaintiff's Subjective Allegations.

At the administrative hearing, Plaintiff testified that she was impaired to an extent far greater than that recognized by the ALJ. She testified, for example, that she was unable to bend or squat because of her back pain and could not lift or carry anything over five pounds. (PageID.67–68.) She further testified she would constantly need to shift positions, and lie down throughout the day. (PageID.68–69.) She also experienced migraines twice a week, and testified they lasted from one to three days. (PageID.69.) The ALJ found Plaintiff's complaints were "not

---

[2] The Court also notes that Plaintiff's brief does not properly reference the court record as required by Administrative Order No. 16-MS-017, effective March 7, 2016, *available at* http://www.miwd.uscourts.gov/referencing-court-record-pageid-cite-form. Plaintiff's counsel is advised that future filings which fail to follow the Court's briefing requirements may be stricken.

entirely credible." (PageID.49.) Plaintiff claims that the ALJ failed to properly accommodate her complaints of pain, and ignored evidence supporting her complaints. (PageID.575.)

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be

6

accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

    Here, the ALJ provided a lengthy credibility assessment spanning over three pages. (PageID.49–52.) In doing so, the ALJ discussed several of the records Plaintiff claims he ignored. In assessing Plaintiff's complaints of back pain, the ALJ first correctly noted that despite alleging a June 30, 2008, onset date, the earliest treatment notes are dated in October 2010. (PageID.303.) It is Plaintiff's burden to provide medical records as evidence under 20 C.F.R. §§ 404.1512, 416.912. Beginning with the earliest records available, the ALJ noted a CT scan of Plaintiff's lumbar spine on October 2, 2010, found only minimal degenerative changes. (PageID.303.) During multiple visits that month she also had an intact gait, and her station and posture were normal. A Romberg test was negative. (PageID.297, 300.) This was also true a year later on October 17, 2011, after another MRI. (PageID.331, 344.) At a May 15, 2012, consultative examination, Plaintiff also walked with a normal gait. (PageID.426.) Her back had full range of motion at a January 16, 2013, examination. (PageID.441.) She is able to cook and put dishes in the dishwasher, (PageID.73), take

public transportation and go shopping (PageID.74–75.) She is able to take care of her son, goes with him to T-ball games and doctor appointments, and feeds and dresses him. (PageID.75.) The ALJ reasonably found these records and activities inconsistent with the severity of Plaintiff's complaints. The ALJ also found the severity of Plaintiff's complaints regarding her migraines to be inconsistent with the record. As the ALJ noted, Plaintiff's treatment for these migraines has been conservative. For example, despite testifying that she experienced, on average, migraines twice a week, the record shows that on February 25, 2013, she stated she only had one per month, and they were relived by taking Tylenol p.m. (PageID.450.) She also is able to participate in the activities described above. The ALJ did not err in finding these records to be inconsistent with Plaintiff's complaints. In sum, the ALJ thoroughly and accurately discussed Plaintiff's complaints, and provided extensive discussion, citing to the record, why he found the severity of Plaintiff's allegations were not fully credible.

Plaintiff makes several additional perfunctory arguments. (PageID.578–579.) She argues that the ALJ could not rely on her activities of daily living, and did not factor in the fact that she only performed these activities because they were necessary. But the fact remains that she is nonetheless able to engage in such activities. Moreover, the regulations explicitly include daily activities among those factors relevant to evaluating the intensity and persistence of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Here, the ALJ did not equate Plaintiff's daily activities with the ability to perform full time work, but rather found them inconsistent with the severity of her complaints. Plaintiff also faults the ALJ for failing to provide a few words regarding the side effects she experienced from medications. Allegations of a medication's side effects must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114

F. App'x 662, 665–66 (6th Cir. 2004). Plaintiff relies on two of her statements she made to the agency, as well as a single treatment record from February 9, 2012. (PageID.422.) There, Plaintiff stated that medication she was taking on an "as needed" basis caused an itching sensation. (PageID.422.)  But she also stated she was countering the reaction by taking Benadryl. (PageID.422.) Moreover, in her statement to the agency, Plaintiff stated she did not experience side effects from that medication. (PageID.276.) Accordingly, the Court finds any error here to be harmless.

> For all the above reasons, Plaintiff's first claim of error is denied.

> **2.     The ALJ Properly Relied on the Agency Consultant Opinions.**

As noted above, Plaintiff's brief is vague. (PageID.575–575.) Given the nebulous nature of the brief, the Commissioner has covered her bases and argues in her brief that both the ALJ's credibility discussion and RFC determination as a whole are supported by substantial evidence. As to the latter point, the Commissioner argues the ALJ correctly determined the RFC by relying, in part, on the agency consultants' opinions. (PageID.604–611.) Using the Commissioner's brief as a springboard, Plaintiff has now filed a reply brief arguing, in part, that the ALJ could not rely on the agency consultants–an argument not raised in her initial brief. (PageID.619–620.) It is well established that a reply brief is not the proper place to raise new arguments. Arguments raised for the first time in a reply brief are waived. *See Sims v. Piper*, No. 07–14380, 2008 WL 3318746, at *4 (E.D. Mich. Aug. 8, 2008) (discussing the issue and citing various decisions); *see also United States v. Jerkins*, 871 F.2d 598, 601 (6th Cir. 1989). If Plaintiff wanted to argue the ALJ's reliance on the agency consultants was improper she should have done so in her initial brief.

Even if Plaintiff had not waived the issue, it would have failed. Given the delay inherent in the administrative review process, few, if any cases, will present a static medical record from a date before the decision on initial review through the date of the ALJ's decision. It is patent that the ALJ understood that the agency consultants gave their opinions on the basis of the medical record as it existed in December 2011 and June 2012. (PageID.42.) The ALJ is responsible for weighing conflicting evidence. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). The ALJ was free to consider the consultant's opinions and determine what weight, if any, they should be given. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994); *see also Brooks v. Comm'r of Soc, Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").

The ALJ found that the consultants' opinions were generally consistent with the record. (PageID.52.) The ALJ noted, however, that though he gave great weight to Dr. Corlette–one of the consultants who rendered her decision in 2011–he found Plaintiff was more restricted than the doctor found because of subsequent medical evidence. (PageID.52.) An ALJ is

not precluded from relying on an opinion that did not consider the complete medical record if the ALJ gives "'some indication that [he] at least considered [the additional evidence]' before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (quoting SSR 96–6p, 1996 WL 374180 at *3). Because the ALJ gave sufficient indication, Plaintiff's claim of error is denied.

### 3. The ALJ Properly Considered Plaintiff's Obesity in the RFC.

Plaintiff next claims the ALJ erred by using her failure to follow prescribed treatment of losing weight to find that her obesity did not impact her ability to function. (PageID.577–78.) Plaintiff cites to agency rulings that state the Commissioner "will rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits." (PageID.578) (citing SSR 02–1p, 2002 WL 34686281, at *9 (S.S.A. Sept. 12, 2007)). Plaintiff misconstrues the ALJ's decision.

At the hearing, the ALJ asked Plaintiff whether her weight caused any problems or limitations. Plaintiff responded that she did not believe so. (PageID.72.) Despite this assertion, the ALJ found Plaintiff's obesity constituted a severe impairment. (PageID.47.) At step four, the ALJ accurately noted Plaintiff had been told that losing weight would help address her lower back pain. (PageID.50, 527.) Contrary to Plaintiff's assertion, the ALJ did not note this fact to demonstrate she was not following treatment, but rather to demonstrate that obesity, in fact, did affect her ability to function. It was entirely appropriate that he did so. Moreover, while the ALJ did find that Plaintiff's obesity would not preclude her from performing medium work, he did not, as Plaintiff claims, find that Plaintiff's obesity had no impact. (PageID.578.) Indeed, having found Plaintiff's obesity constituted a severe impairment a step two, the ALJ proceeded to find that Plaintiff's RFC was reduced to medium work in part because of her obesity. (PageID.52.) The ALJ also restricted

Plaintiff from climbing ladders, ropes and scaffolds and expressly noted he was doing so because of Plaintiff's obesity. (PageID.52.) Similarly, the ALJ expressly included Plaintiff's obesity as a reason for his postural limitations and determination that she could only occasionally reach overhead. (PageID.52.)

While obesity is no longer considered a "listed impairment" by the Social Security Administration, the effect of obesity on a claimant's ability to work must be specifically considered. *See, e.g.*, SSR 02–1P, 2002 WL 34686281; *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) ("an ALJ must 'consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation'") (quoting *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009)).

The ALJ is not obligated to employ any "particular mode of analysis" when assessing the impact of a claimant's obesity. *See Shilo*, 600 F. App'x. at 959. Nevertheless, the ALJ must do more than merely "mention the fact of obesity in passing." *Id.* As the above discussion makes clear, the ALJ did far more than merely mention Plaintiff's obesity in passing. Plaintiff has not shown or even argued, therefore, that her obesity limits her to an extent greater than that found by the ALJ. In sum, the ALJ accounted for Plaintiff's weight both at the hearing and throughout his decision. Plaintiff's claim is rejected.

    **4.**    **The ALJ Properly Considered Plaintiff's Non-Severe Impairments.**

Plaintiff finally argues that the ALJ erred by failing to find multiple impairments to constitute severe impairments at step two. Alternatively, she argues the ALJ failed to properly consider the non-severe impairments when determining Plaintiff's RFC. (PageID.579–580.)

A "severe impairment" is defined as an impairment or combination of impairments

"which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's RFC. *Id.* Here, the ALJ continued to evaluate Plaintiff's claim after finding that she had both severe and non-severe impairments, and accordingly his decision not to classify as severe some other impairments does not constitute reversible error.

The Social Security Act requires the agency "to consider the combined effects of impairments that individually may be non-severe, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability." *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988); 20 C.F.R. §§ 404.1523, 416.923 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). The Sixth Circuit has found that an ALJ's analysis of a claimant's combined impairments sufficient where the ALJ referred to a "combination of impairments" in deciding the claimant did not meet the listings, the ALJ referred to the claimant's "impairments" as not being severe enough to preclude performance of his past relevant work, the ALJ's decision was made after careful consideration of the "entire record," and, all of the claimant's impairments were discussed individually in the decision. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589,

592 (6th Cir. 1987). "To require a more elaborate articulation of the ALJ's thought process would not be reasonable." *Id.* The Sixth Circuit has also found that the ALJ properly considered the combined effects of the claimant's impairments where the ALJ's decision referred to the claimant's "severe impairments" and "combination of impairments." See *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990). Here, the ALJ referred to the issue as whether Plaintiff was disabled under the Social Security Act "by reason of any medically determinable physical or mental impairment or combination of impairments." (PageID.45.) In addition, the ALJ referred to his consideration of Plaintiff impairments, including those that were not severe. (PageID.46.) The ALJ also stated that he made his determination "[a]fter careful consideration of the entire record." (PageID.48.) In support of his RFC determination, the ALJ noted that he had considered Plaintiff's impairments "individually and in combination." (PageID.52.) The ALJ concluded that "[b]ased on the combined effects of the claimant's severe and nonsevere impairments I limited her to medium work." (PageID.52.) The ALJ's decision sufficiently indicates that he considered the combined effects of Plaintiff's impairments, both severe and non-severe. *See Loy*, 901 F.2d at 1310; *Gooch*, 833 F.2d at 592. Accordingly, this claim of error will be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is **AFFIRMED.** A separate judgment shall issue.


Dated: October 5, 2016                                    /s/ Janet T. Neff
                                                          JANET T. NEFF
                                                          United States District Judge